Roksana D. Moradi-Brovia (Bar No. 266572)
W. Sloan Youkstetter (Bar No. 296681)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
roksana@RHMFirm.com
sloan@RHMFirm.com

*Proposed Attorneys for Debtor*
DRIP MORE LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

|  |  |
|---|---|
| In re | ) Case No. 8:24-bk-11703-SC |
| | ) |
| | ) Chapter 11 |
| DRIP MORE LLC, | ) |
| | ) |
| Debtor and Debtor-in-Possession. | ) **EMERGENCY MOTION FOR** |
| | ) **AUTHORITY TO USE CASH** |
| | ) **COLLATERAL ON AN INTERIM** |
| | ) **BASIS; MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES; DECLARATION** |
| | ) **OF BRIAN BEREBER IN SUPPORT** |
| | ) **THEREOF** |
| | ) |
| | ) Date:   TBD |
| | ) Time:   TBD |
| | ) Place:  Courtroom 5C |
| | )         411 West Fourth Street |
| | )         Santa Ana, CA 92701 |
| | ) |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES**

**BANKRUPTCY JUDGE; SECURED CREDITORS; THE UNITED STATES**

**TRUSTEE; CREDITORS AND ALL PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that, DRIP MORE LLC, the "Debtor" and "Debtor-in-

Possession" in the above-stated case, shall and does hereby move the Court for an order

approving the use of cash collateral, pursuant to 11 U.S.C. §363, as follows.

RHM LAW LLP

1

1

## <u>TABLE OF CONTENTS</u>

2

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................3
I.    INTRODUCTION ............................................................................................3

3

II.    REQUEST FOR PRELIMINARY HEARING AND INTERIM
ORDER..........................................................................................................3

4

III.   STATEMENT OF RELIEF SOUGHT ........................................................5
IV.  STATEMENT OF FACTS..............................................................................6

5

      A.     *Overview of the Debtor's operations and the events leading to
the filing.* ............................................................................................6

6

      B.     *The purported secured creditors and the obligations.* ..............10
      C.     *Proposed use of cash collateral.* ...................................................13

7

V.    DISCUSSION ...............................................................................................14
      A.     *The Court should authorize the Debtor's use of the Cash*

8

            *Collateral.* ........................................................................................14
      B.     *The Purported Secured Creditors' interests are adequately*

9

            *protected.* .........................................................................................15
      C.     *In determining adequate protection, the Court should promote*

10

            *reorganization.* ...............................................................................17
**DECLARATION OF BRIAN BEREBER**...............................................................18

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RHM LAW LLP**

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.     INTRODUCTION

3

DRIP MORE LLC, the "Debtor" and "Debtor-in-Possession" ("DIP'") herein, filed

4

its Chapter 11 case on July 5, 2024.

5

6

## II.     REQUEST FOR PRELIMINARY HEARING AND INTERIM ORDER

7

Pursuant to Rule 4001(b)(2):

8

> [T]he court may conduct a preliminary hearing before such 14-day period
> expires, but the court may authorize the use of only that amount of cash
> collateral as is necessary to avoid immediate and irreparable harm to the
> estate pending a final hearing.

9

10

Here, the Debtor requests that the Court treat the hearing as a preliminary hearing

11

and enter an interim order approving necessary expenses to avoid immediate and

12

irreparable harm to the estate pending a final hearing.

13

Within the first 14-days of this case (July 5, 2024 through July 19, 2024 - business

14

days), the Debtor has the following necessary expenses to avoid immediate and irreparable

15

harm:

16

| Expenses | Amount |
|---|---|
| Materials (cost of goods sold) | $96,690 |
| Employee Payroll (excluding insiders) | $20,561 |
| Payroll Taxes | $2,848 |
| Property Insurance | $835 |
| Shipping/Warehouse Supplies | $1,008 |
| Manufacturing Supplies | $437 |
| Box Truck Rental | $900 |
| Storage | $1,828 |
| Electrical | $876 |
| Waste Disposal | $5,055 |
| Water | $525 |
| Fuel for Box Truck | $750 |
| Licenses/Permits | $5,000 |
| Shipping | $8,680 |
| **Total:** | **$145,993** |

17
18
19
20
21
22
23
24
25
26

The Debtor manufactures and distributes vape tobacco flavor products.  This is a

27

relatively large operation as it has 20 full-time non-insider employees, consisting of

28

**RHM LAW LLP**

**3**

1   management, manufacturing, sales, warehouse/assembly, and shipping.  The expenses

2   listed in the chart above will ensure that the Debtor's operation will allow the business to

3   run smoothly and not be affected by the filing.  With this kind of operation, the whole is

4   greater than the sum of its parts as they are interdependent.  If any one component is

5   affected, it will have significant consequences for the Debtor's ability to manufacture and

6   sell its products and generate revenue for the creditors of the estate.  As a result, the Debtor

7   could lose customers and damage its reputation in the industry.  Therefore, unless the

8   Debtor is able to pay the expenses set forth in the chart, it will cause immediate and

9   irreparable harm to the business.

10       The Debtor cannot operate without its employees as they make the products,

11   assemble them, package/ship them, sell, etc. *The Debtor's employees are scheduled to be*

12   *paid on July 15, 2024 (15th and last day of each month), with payroll to be initiated by*

13   *2:00 p.m. on July 12, 2024.*  Some of those employees have families with their own bills

14   and household expenses.  If the Debtor is unable to pay payroll for several weeks, some of

15   the employees might quit to find other employment or become disgruntled, which may

16   affect their performance.  It is critical for the survival of the Debtor that it keeps its

17   employees happy and pays its employees without any interruptions.

18       Similarly, the Debtor must be able to pay the taxes associated with payroll to avoid

19   becoming delinquent with the Employment Development Department (the "EDD") and

20   incurring additional administrative expenses.

21       The Debtor must have access to funds to buy the materials to make the products as

22   it cannot generate revenue unless it has the products available to sell to its customers.  This

23   will allow the Debtor to adequately manufacture its products.  Along those lines, the

24   Debtor has to purchase supplies associated with the manufacturing, which allows the

25   Debtor to be able to make its products and to keep its employees safe.  The Debtor must

26   also pay for waste disposal from the manufacturing of the products, otherwise the Debtor

27

28

RHM LAW LLP

**4**

1    would have to incur the expenses with storing and/or disposing of the waste.  This also

2    ensures that the Debtor will not violate any state/federal regulations as to waste disposal.

3        The Debtor must be able to pay its property insurance premium timely or risk

4    exposing the estate to postpetition liability as the policy could be suspended or cancelled.

5        The Debtor has expenses associated with the warehouse supplies, including

6    assembly and storage.  The Debtor must have the ability to package its product in order to

7    make sure it is available for sale and distribution.  Similarly, the Debtor must have the

8    ability to pay for storage to adequately store and protect its product.  If the product gets

9    damaged or stolen, that will severely harm the Debtor.

10        The Debtor must pay for shipping and the associated expenses, such as shipping

11    supplies, box truck rental, and fuel.  Again, if the Debtor is unable to ship or move its

12    product, it will not be able to generate revenue and will severely harm its reputation.

13        The Debtor must pay its utilities, such as electricity and water, or risk them being

14    shut off for nonpayment.

15        Lastly, the Debtor must be able to pay all licenses and permits to stay in compliance

16    with industry regulations.

17

18        **III.    STATEMENT OF RELIEF SOUGHT**

19        Notwithstanding the previous section, the Debtor respectfully requests an order of

20    this Court authorizing it to use cash collateral for the period July 5, 2024 through October

21    31, 2024, on the terms and conditions set forth herein, and as set forth in the projected

22    income and expense statement (the "Budget"), which is attached hereto as **Exhibit "A"**

23    and incorporated herein.

24        In order to continue the operation of the business, the Debtor must be authorized to

25    use cash collateral to pay ordinary and necessary operating expenses pursuant to the

26    Budget.

27        If the Debtor's ability to use cash collateral is interrupted, the Debtor will be unable

28

RHM LAW LLP

to pay the necessary and ordinary expenses required to allow it to keep operating, such as payroll, rent, insurance, inventory, utilities, and other industry specific expenses. *In sum, the Debtor's business, and the Debtor's prospects for a successful reorganization, will end.*

As part as the proposed adequate protection, the Debtor proposes monthly adequate protection payments to following purported secured creditors:

- Harper Advance, LLC ("Harper"): $35,000 per month, with payments starting on July 29, 2024, and on the 29th of each month thereafter, through October 31, 2024.

- Employment Development Department ("EDD"): $2,095 per month, with payments starting on July 29, 2024, and on the 29th of each month thereafter, through October 31, 2024.

Attached as **Exhibit "J"** and incorporated herein is the required *Statement Regarding Cash Collateral or Debtor in Possession Financing [FRBP 4001; LBR 4001-2].*

## IV.    STATEMENT OF FACTS

A.    *Events leading to the filing.*

The Debtor was formed in August 2016 as a California limited liability corporation. Brian Bereber is the chief executive officer and sole managing member.

In or around 2015, Brian began experimenting with his own e-liquid flavor combinations for vaping. He meticulously mixed vegetable glycerin and nicotine into his creations, refining and perfecting his recipes. Over time, he developed hundreds of revisions for personal use.

Brian decided to create a product. He commissioned artwork from a talented graphic designer and developed packaging, ultimately choosing a chipboard display box that concealed a PET bottle with a child-resistant cap. He selected his five favorite flavors and named the brand Candy King. With limited funds, Brian approached a licensed manufacturer in Redlands, CA, to bring his product to life.

RHM LAW LLP

1    Once the first batch was ready for distribution, Brian tirelessly pitched the products
2    to influential distributors, delivering samples and winning them over with quality. Orders
3    began stacking up, prompting Brian to create the Debtor. Brian licensed the name, flavor
4    recipes, packaging, and mixing process he had developed to the Debtor.

5    Orders grew quickly, and by March 2017, the Debtor acquired its own warehouse
6    and hired its first two employees, who are still with the company today.

7    In August 2017, Drip More LP was created as a pass-through company to facilitate
8    hiring more employees, including out-of-state traveling sales representatives.  The
9    company needed reliable transportation for their door-to-door sales reps traveling across
10   the United States.  Drip More LLC, a Montana entity, was created to hold the title and
11   registration of six fleet cargo vans used by the sales employees.

12   By August 2018, the Debtor became dissatisfied with the quality and production
13   rate of the manufacturer.  The Debtor decided to invest in a manufacturing license,
14   machinery, additional warehouse space, and expanded staff to produce its own products.
15   The Debtor grew to employ about 80 people at its peak, including administrative, sales,
16   marketing, distribution, and production departments.  The Debtor currently sells over
17   100,000 bottles of e-liquid per year to hundreds of licensed resellers across the US and
18   internationally.

19   To diversify, many companies in the electronic cigarette industry sought Brian's
20   help to develop new product types. 88 Cloud Consulting LLC was established to manage
21   incoming clients wanting to develop their own product concepts and flavor recipes.

22   In 2019, Brian created Cali Co Pack LLC, seeking to secure customers for whom
23   this entity could produce and package similar e-liquid bottles for other brands.

24   After successfully navigating the implementation of the U.S. Food and Drug
25   Administration's ("FDA") Premarket Tobacco Product Application ("PMTA") process in
26   2019, the Debtor grew in 2020, achieving a gross revenue of $25.1 million.

27

28

**RHM LAW LLP**

As the Debtor's customers are distributors, the Debtor does not sell directly to end-use consumers and therefore its profit margin is the lowest in the supply chain.  To address this, Brian decided to open brick-and-mortar vape retail stores in Arizona to promote the Debtor's products at a higher profit margin.  The plan was to open seven locations quickly.  A bookkeeper posing as a CPA advised opening each location under its own entity and as a partnership, resulting in the creation of several LPs throughout 2019: '88 Vape LP, '88 Vape #2 LP, '88 Vape #3 LP, '88 Smoke & Vape LP, '88 Smoke & Vape #2 LP, '88 Smoke & Vape #3 LP, '88 Smoke & Vape #4 LP.  Unfortunately, this disorganized setup did not work as planned.  Only four stores opened, and the rest became burdensome lease obligations.  The retail store plan suffered due to in-person COVID-19 pandemic related - closures and lack of construction development.  All locations ultimately closed at the end of 2023 and beginning of 2024, several of the landlords sued for possession.

Despite an influx of sales in 2020, the Debtor's transition to 2021 was challenging.  The Debtor had expanded into a new product line, which initially significantly contributed to sales.  The Debtor began licensing Brian's name, flavor recipes, and packaging designs for a line of disposable vape devices manufactured in China and imported to the US for sale.  However, a large batch of defective units and the company had to refund customers and dispose of the defective inventory, severely impacting revenue.  Additionally, the Debtor's main business of e-liquid sales was hit hard as procurement of raw materials became incredibly expensive and often delayed.

Coupled with COVID-19 pandemic related-slowdowns in logistics and supply chain management, these issues led to significant financial losses and made maintaining growth impossible.

In 2021, the Debtor's revenue dipped to $22.6 million. Brian decided to diversify further to mitigate risks associated with potential regulatory changes in the e-liquid market.  Deadstock LLC was created to help the Debtor enter the tech industry.  The Debtor invested in developing a platform to match buyers with sellers and verify product

RHM LAW LLP

**8**

1  legitimacy before shipping.  On-staff software engineers and mobile application

2  developers created a custom platform. FLOM LLC was created in July of 2023 as a pass-

3  through company to facilitate Deadstock LLC's work.

4      Things improved in 2022, with the Debtor reaching a gross revenue of $23.6

5  million.  However, the new projects were costly and often delayed due to financial

6  constraints, as e-liquid product sales declined.  Regulatory shifts in the new industry added

7  further challenges, leading the Debtor to take unfavorable loans and enter into merchant

8  credit agreements (MCAs) to manage cash flow.  These MCAs made daily withdrawals

9  from the Debtor's business account, exacerbating cash flow issues.  The company also

10  spent significant amounts on legal and compliance costs due to ever-changing FDA

11  regulations.

12      In April 2024, the largest MCA, Harper Advance, LLC sued the Debtor, several of

13  the related entities and Brian, for breach of contract and related causes of action in New

14  York Supreme Court.  The parties had attempted to negotiate in good faith for several

15  months and were ultimately unable to come to terms.

16      In the past year, sales further dipped due to economic struggles and industry

17  slowdowns.  Combined with payments on the predatory loans, the Debtor's gross revenue

18  dipped down to $10.2 million in 2023.

19      However, quick thinking and a dedicated staff allowed the company to maintain a

20  solid reputation and keep sales orders coming in.  The Debtor now employs 20 people,

21  65% of whom have been with the company for over five years.  These employees work

22  from a sales office and warehouse located in Redlands, CA, where inventory is

23  manufactured, sold, and shipped.

24      The Debtor's sales team works hard to keep current customers happy, procure new

25  customers through cold calls and walk-ins, and expand market coverage.  Product

26  marketing through tradeshows and adult entertainment advertising is key to attracting new

27  customers and retaining existing ones.  By keeping overheads low and focusing on

28

RHM LAW LLP

1  customer satisfaction, quality, and marketing, the company has maintained consistent sales

2  and plans to grow its customer base once again.

3      Prepetition, Drip More LLC Montana, Drip More LP, 88 Cloud Consulting LLC,

4  Deadstock LLC, '88 Vape LP, '88 Vape #2 LP, '88 Vape #3 LP, '88 Smoke & Vape LP, '88

5  Smoke & Vape #2 LP, '88 Smoke & Vape #3 LP, '88 Smoke & Vape #4 LP, FLOM LLC,

6  and Cali Co Pack LLC sold their assets and assigned their debts to the Debtor herein.  The

7  goal is to now take all the ideas and business models of these entities and operate all under

8  the Debtor.

9      This case was filed so that the Debtor can reorganize its financial affairs and

10  maximize the value of his assets for the benefit of the estate.

11

12      **B.**      *The purported secured creditors and obligations.*

13      The Debtor believes that the following purported creditors have liens on cash

14  collateral:

| | Creditor | Earliest Lien date | Claim Amount | Lien |
|---|---|---|---|---|
| 1 | Copperwood Capital LLC/ LIQUIDUS FUNDING LLC ("Copperwood") | 2/13/2020 (UCC) | $0 (paid in full prepetition) | "All accounts, all accounts receivables (past and future) chattel paper, cash deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by debtor; all proceeds, as that term is defined in Article 9 of the UCC (the "Collateral")." |
| 2 | Unknown (filed by C T Corporation System) | 4/30/2020 (UCC) | $0 | "All personal property of every kind and nature, including, without limitation, all accounts, contract rights, rights to the payment of money, insurance claims and proceeds, chattel paper, electronic chattel paper, |

| | | | | documents, instruments, securities and other investment property, deposit accounts, supporting obligations of every nature, and general intangibles, including without limitation, customer lists, and all books and records related thereto, and all recorded data of any kind and any nature, regardless of the medium of recording; together with, to the extend not listed above as the original collateral, all substitutions and replacements for and products of any of the foregoing property, and together with proceeds of any and all of the foregoing property." |
|---|---|---|---|---|
| 3 | Harper Advance, LLC ("Harper") | 7/16/2020 (UCC) | $9,432,349.16 (the cumulative amount from its four liens) | "Secured party has a security interest in all of the Debtor's future receivables, inventory, equipment, goods, accounts, investment property, and other personal property and assets." |
| 4 | Harper (assignee from Funomate Technologies, 1/31/2024) | 8/9/2022 (UCC) | See above | "Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts: I Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing." |

RHM LAW LLP

| 5 | Harper | 4/5/2023 (UCC) | See above | "All assets and accounts receivable of Drip More LP." |
| 6 | Harper | 4/5/2023 (UCC) | See above | "All assets and accounts receivable of Drip More LLC." |
| 7 | Employment Development Department ("EDD") | 11/27/2023 (Tax Lien) | $8,380.26 | "The amount of delinquency above set forth shall be a lien upon all real or personal property and rights to such property, including all after acquired property and rights to property belonging to the above named." |
| 8 | MODO LLC ("MODO") | 1/22/2024 (UCC) | Unknown | "Secured party has a security interest in all of debtor's future receivables, inventory, equipment, goods, accounts, investment property, and other personal property and assets." |

(Collectively, the "Purported Secured Creditors").

Attached as **Exhibit "B"** and incorporated herein is the UCC-1 Financing Statement ("UCC") filed by Copperwood on February 13, 2020.

Attached as **Exhibit "C"** and incorporated herein is the UCC filed by C T CORPORATION SYSTEM on behalf of an unknown party on April 30, 2020.

Attached as **Exhibit "D"** and incorporated herein is the UCC filed by Harper on July 16, 2020.

Attached as **Exhibit "E"** and incorporated herein is the UCC filed by Fundomate Technologies on August 9, 2022 and the assignment to Harper filed on January 31, 2024.

Attached as **Exhibit "F"** and incorporated herein is the UCC filed by Harper on April 5, 2023.

Attached as **Exhibit "G"** and incorporated herein is the UCC filed by Harper on April 5, 2023.

Attached as **Exhibit "H"** and incorporated herein is the tax lien filed by the EDD on November 27, 2023.

Attached as **Exhibit "I"** and incorporated herein is the UCC filed by MODO on January 22, 2024.

RHM LAW LLP

1     C.     *Proposed use of cash collateral.*

2          The Debtor believes that the Purported Secured Creditors will take the position that

3     all tangible and intangible personal property of the Debtor (the "Cash Collateral")

4     constitutes cash collateral within the meaning of §363(a) of the Bankruptcy Code. *The*

5     *Debtor is not aware of any other entity asserting an interest in the Cash Collateral.*

6          The Debtor proposes that it use the Cash Collateral to pay the allowed operating

7     expenses pursuant to the Budget from July 3, 2024 through October 31, 2024 (the "Interim

8     Period"). The Debtor believes that those expenses represent the expenditures to maintain

9     the business operations for the Interim Period.

10         Although the Budget represents the Debtor's best estimate of the necessary

11    expenses associated with the operation of the Property during the Interim Period, they may

12    fluctuate due to circumstances out of the Debtor's control, such as unanticipated expenses

13    related to restocking inventory, repairing or replacing equipment, hiring new employees, or

14    other emergency expenses. Therefore, the Debtor requests court authority to deviate from

15    the total operating expenses contained in the budget by no more than 15% and to deviate

16    by category (provided the Debtor does not pay any expenses outside any of the approved

17    categories) without the need for further Court order.

18         The Debtor will continue to be bound by the terms and conditions set forth in the

19    prepetition agreement except as specifically modified herein. This shall not constitute a

20    modification of the liens granted to the Purported Secured Creditors by the Debtor

21    pursuant to the various agreements between the parties and various perfection documents.

22         In order to continue the operation of the business, the Debtor must be authorized to

23    use cash collateral to pay the ordinary and necessary operating expenses. If the Debtor's

24    ability to use cash collateral is interrupted, the Debtor will be unable to pay the necessary

25    and ordinary expenses required to allow it to keep operating, such as materials, payroll,

26    rent, insurance, inventory, utilities, and other industry specific expenses, i.e., the Debtor

27

28

RHM LAW LLP

**13**

1  will fail, and its employees will lose their jobs.  The Debtor's business, and the Debtor's

2  prospects for a successful reorganization, will end.

3

4                              **V.    <u>DISCUSSION</u>**

5        *A.    The Court should authorize the Debtor's use of the Cash Collateral.*

6        As a general matter, a debtor-in-possession is permitted to use property of the estate

7  in the ordinary course of business without the need for notice or a hearing.  11 U.S.C.

8  Section 363(c)(1).  However, a debtor's use of cash collateral is an exception to this

9  general rule.  Section 363(c)(2) provides in pertinent part:

10                    (2) The [debtor in possession] may not use, sell, or lease cash
                      collateral ... unless
11
                          (A) each entity that has an interest in
12                        Such cash collateral consents; or

13                        (B) the court, after notice and a hearing, authorizes such
                          use, sale or lease in accordance with the provisions of
14                        this section.

15  11 U.S.C. Section 363(c)(2).

16        Bankruptcy courts have consistently held that it is appropriate for a Chapter 11

17  debtor to use a secured creditor's cash collateral for a reasonable period of time for the

18  purpose of maintaining and operating its property.  *See Mbank Dallas, N.A. v. O'Connor*

19  (*In re O'Connor*), 808 F.2d 1393, 1397 (10th Cir. 1987).  In addition, where, as here, the

20  debtor is operating a business, it is extremely important that use of cash collateral be

21  allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to

22  rehabilitate debtors and generally access to cash collateral is necessary to operate a

23  business." *In re Dynaco Corporation*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993).

24        Here, the Debtor seeks to use Cash Collateral based on the attached Budget for the

25  next three months, i.e., the Interim Period.  The Budget delineates the amount of Cash

26  Collateral needed for the Interim Period to maintain and operate the business.  The ability

27

28

RHM LAW LLP

1  for the Debtor to maintain and operate the business will significantly facilitate the intended

2  goal of this case to reorganize.

3      As set forth above, if the Debtor's access to the cash collateral is interrupted or

4  ceases, the consequences would be disastrous for the business and the estate.  The Debtor

5  would be unable to operate and preserve the business.  The employees would leave, the

6  Debtor would be unable to purchase inventory, and the business would shut down making

7  its value as a going concern zero.

8      As such, the Debtor has determined that it would be in the overwhelming best

9  interests of the estate and its creditors to use the cash collateral to continue to operate and

10  maintain its business.

11

12      **B.**      *The Purported Secured Creditors' interests are adequately protected.*

13      Pursuant to §363(c)(2), the Court may authorize the debtor to use a secured

14  creditor's cash collateral if the Court determines that the secured creditor is adequately

15  protected.  *Pistole v. Mellor* (*In re Mellor*)*, 734 F.2d 1396, 1400 (9th Cir. 1984).  See also*

16  *O'Connor*, *supra*, 808 F.2d at 1398; *McCombs Properties VI, Ltd. v. First Texas Savings*

17  *Association* (*In re McCombs Properties VI, Ltd.*)*, 88 B.R. 261, 265 (Bankr. C.D. Cal.

18  1988).

19      In ordinary circumstances, a secured creditor is to be protected against a decrease in

20  value which directly affects the secured creditor's interest in its collateral.  *See United*

21  *Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365,

22  108 S.Ct. 626, 630, (1988); Section 506(a) of the Bankruptcy Code "limit(s) the secured

23  status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount

24  of the] claim or the value of the collateral."  *McCombs*, supra, 88 B.R. at 266.

25      As a general rule, a debtor may use cash collateral where such use would enhance

26  or preserve the value of the collateral.  The Debtor intends to use the Cash Collateral to

27  operate and preserve the business as is set forth in the Budget attached as **Exhibit "A."**

28

RHM LAW LLP

1   The use of Cash Collateral is essential to continue the ordinary maintenance and operations

2   of the business.  The uninterrupted use of Cash Collateral will allow the Debtor to continue

3   to generate revenue for the estate and its creditors.  The Debtor believes that it has

4   significant value as a going concern rather than if it is forced to shut down and liquidate its

5   assets.

6        Therefore, the Debtor believes that the Purported Secured Creditors are adequately

7   protected by the continued and uninterrupted operation of the business.  The Debtor's use

8   of Cash Collateral will enhance or preserve the value of the estate because the use of Cash

9   Collateral is essential to continue the ordinary maintenance and operation of the business.

10       The Debtor will also give to the Purported Secured Creditors a replacement lien to

11   the extent that the creditor's Cash Collateral is actually used.  The Debtor will segregate in

12   its cash collateral DIP bank account all revenue exceeding the funds needed to pay the

13   expenses set forth in the Budget.

14       The Debtor also proposes monthly adequate protection payments to following

15   Purported Secured Creditors:

16   -   Harper: $35,000 per month, with the payments starting on July 29, 2024, and on the

17       29th of each month thereafter, through October 31, 2024.

18   -   EDD: $2,095 per month, with the payments starting on July 29, 2024, and on the

19       29th of each month thereafter, through October 31, 2024.

20       The Debtor believes that MODO will be fully unsecured based on the senior liens

21   and the value of the Debtor's assets, and therefore, will not receive adequate protections

22   payments.  Nonetheless, the Debtor believes that MODO will be adequately protected by

23   the continued operation of the business.

24       Based on the foregoing, the Debtor believes that the Purported Secured Creditors

25   will be adequately protected.

26

27

28

**RHM LAW LLP**

1        *C.*       *In determining adequate protection, the Court should promote*

2              *reorganization.*

3        In determining adequate protection, Courts have stressed the importance of

4  promoting a debtor's reorganization.  In *In re O'Connor*, <u>supra</u>, the Tenth Circuit stated:

5

6        In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the

7        ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the

8        administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a

9        successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to

10        achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests

11        of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the

12        early stages of administration.

13  *In re O'Connor*, 808 F.2d at 1937.

14        In order to promote Debtor's reorganization, the Court should grant the relief

15  requested herein.  The Debtor has demonstrated herein that the use of the Cash Collateral

16  as proposed by the Debtor will preserve the business for the benefit of this estate and the

17  creditors, specifically including the Purported Secured Creditors.  Indeed, a successful

18  reorganization depends upon the use of Cash Collateral as proposed herein.

19

20        WHEREFORE, Debtor respectfully requests that the Court enter its Order

21  authorizing it to use cash collateral on the terms and conditions described herein and the

22  exhibits thereto and granting such other and further relief as is just and proper under the

23  circumstances.

24  Dated:  July 8, 2024            **RHM LAW LLP**

25

26             **By: /s/ Roksana D. Moradi-Brovia**

27                **Roksana D. Moradi-Brovia**
              **W. Sloan Youkstetter**

28                *Proposed Attorneys for Debtor*
              DRIP MORE LLC

**RHM LAW LLP**

## <u>DECLARATION OF BRIAN BEREBER</u>

I, Brian Bereber, declare as follows:

1.      I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto.  Where facts are alleged upon information and belief, I believe them to be true.

2.      I am a managing member of DRIP MORE LLC, the "Debtor" and "Debtor-in-Possession" in the above-captioned case.  I am authorized to make decisions for the Debtor.

3.      I am the custodian of the Debtor's books, records, and documents.  The Debtor maintains records of its transactions in the regular course of business, and it is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs.  The Debtor relies on these records in connection with its business dealings.

4.      The Debtor was formed in August 2016 as a California limited liability corporation.  I am the chief executive officer and sole managing member.

5.      In or around 2015, I began experimenting with my own e-liquid flavor combinations for vaping.  I meticulously mixed vegetable glycerin and nicotine into my creations, refining and perfecting the recipes.  Over time, I developed hundreds of revisions for personal use.

6.      I thereafter decided to create a product.  I commissioned artwork from a talented graphic designer and developed packaging, ultimately choosing a chipboard display box that concealed a PET bottle with a child-resistant cap.  I selected his five favorite flavors and named the brand Candy King.  With limited funds, I approached a licensed manufacturer in Redlands, CA, to bring my product to life.

7.      Once the first batch was ready for distribution, I tirelessly pitched the products to influential distributors, delivering samples and winning them over with quality.

RHM LAW LLP

1    Orders began stacking up, prompting me to create the Debtor. I licensed the name, flavor

2    recipes, packaging, and mixing process that I had developed to the Debtor.

3        8.    Orders grew quickly, and by March 2017, the Debtor acquired its own

4    warehouse and hired its first two employees, who are still with the company today.

5        9.    In August 2017, Drip More LP was created as a pass-through company to

6    facilitate hiring more employees, including out-of-state traveling sales representatives.

7    The company needed reliable transportation for their door-to-door sales reps traveling

8    across the United States.  Drip More LLC, a Montana entity, was created to hold the title

9    and registration of six fleet cargo vans used by the sales employees.

10        10.    By August 2018, the Debtor became dissatisfied with the quality and

11    production rate of the manufacturer.  The Debtor decided to invest in a manufacturing

12    license, machinery, additional warehouse space, and expanded staff to produce its own

13    products.

14        11.    The Debtor grew to employ about 80 people at its peak, including

15    administrative, sales, marketing, distribution, and production departments.

16        12.    The Debtor currently sells over 100,000 bottles of e-liquid per year to

17    hundreds of licensed resellers across the US and internationally.

18        13.    To diversify, many companies in the electronic cigarette industry sought my

19    help to develop new product types. 88 Cloud Consulting LLC was established to manage

20    incoming clients wanting to develop their own product concepts and flavor recipes.

21        14.    In 2019, I created Cali Co Pack LLC, seeking to secure customers for whom

22    this entity could produce and package similar e-liquid bottles for other brands.

23        15.    After successfully navigating the implementation of the U.S. Food and Drug

24    Administration's ("FDA") Premarket Tobacco Product Application ("PMTA") process in

25    2019, the Debtor grew in 2020, achieving a gross revenue of $25.1 million.

26        16.    As the Debtor's customers are distributors, the Debtor does not sell directly

27    to end-use consumers and therefore its profit margin is the lowest in the supply chain.  To

28

RHM LAW LLP

1  address this, I decided to open brick-and-mortar vape retail stores in Arizona to promote

2  the Debtor's products at a higher profit margin.

3    17.    The plan was to open seven locations quickly.  A bookkeeper posing as a

4  CPA advised opening each location under its own entity and as a partnership, resulting in

5  the creation of several LPs throughout 2019: '88 Vape LP, '88 Vape #2 LP, '88 Vape #3

6  LP, '88 Smoke & Vape LP, '88 Smoke & Vape #2 LP, '88 Smoke & Vape #3 LP, '88

7  Smoke & Vape #4 LP.  Unfortunately, this disorganized setup did not work as planned.

8  Only four stores opened, and the rest became burdensome lease obligations.  The retail

9  store plan suffered due to in-person COVID-19 pandemic related -closures and lack of

10 construction development.  All locations ultimately closed at the end of 2023 and

11 beginning of 2024, several of the landlords sued for possession.

12   18.    Despite an influx of sales in 2020, the Debtor's transition to 2021 was

13 challenging.  The Debtor had expanded into a new product line, which initially

14 significantly contributed to sales.  The Debtor began licensing my name, flavor recipes,

15 and packaging designs for a line of disposable vape devices manufactured in China and

16 imported to the US for sale.  However, a large batch of defective units and the company

17 had to refund customers and dispose of the defective inventory, severely impacting

18 revenue.  Additionally, the Debtor's main business of e-liquid sales was hit hard as

19 procurement of raw materials became incredibly expensive and often delayed.

20   19.    Coupled with COVID-19 pandemic related-slowdowns in logistics and

21 supply chain management, these issues led to significant financial losses and made

22 maintaining growth impossible.

23   20.    In 2021, the Debtor's revenue dipped to $22.6 million. I decided to diversify

24 further to mitigate risks associated with potential regulatory changes in the e-liquid market.

25 Deadstock LLC was created to help the Debtor enter the tech industry.  The Debtor

26 invested in developing a platform to match buyers with sellers and verify product

27 legitimacy before shipping.  On-staff software engineers and mobile application

28

**RHM LAW LLP**

1  developers created a custom platform. FLOM LLC was created in July of 2023 as a pass-

2  through company to facilitate Deadstock LLC's work.

3      21.    Things improved in 2022, with the Debtor reaching a gross revenue of $23.6

4  million.  However, the new projects were costly and often delayed due to financial

5  constraints, as e-liquid product sales declined.  Regulatory shifts in the new industry added

6  further challenges, leading the Debtor to take unfavorable loans and enter into merchant

7  credit agreements (MCAs) to manage cash flow.  These MCAs made daily withdrawals

8  from the Debtor's business account, exacerbating cash flow issues.  The company also

9  spent significant amounts on legal and compliance costs due to ever-changing FDA

10  regulations.

11      22.    In April 2024, the largest MCA, Harper Advance, LLC sued the Debtor,

12  several of the related entities and me, for breach of contract and related causes of action in

13  New York Supreme Court.  The parties had attempted to negotiate in good faith for several

14  months and were ultimately unable to come to terms.

15      23.    In the past year, sales further dipped due to economic struggles and industry

16  slowdowns.  Combined with payments on the predatory loans, the Debtor's gross revenue

17  dipped down to $10.2 million in 2023.

18      24.    However, quick thinking and a dedicated staff allowed the company to

19  maintain a solid reputation and keep sales orders coming in.  The Debtor now employs 20

20  people, 65% of whom have been with the company for over five years.  These employees

21  work from a sales office and warehouse located in Redlands, CA, where inventory is

22  manufactured, sold, and shipped.

23      25.    The Debtor's sales team works hard to keep current customers happy,

24  procure new customers through cold calls and walk-ins, and expand market coverage.

25  Product marketing through tradeshows and adult entertainment advertising is key to

26  attracting new customers and retaining existing ones.  By keeping overheads low and

27

28

RHM LAW LLP

focusing on customer satisfaction, quality, and marketing, the company has maintained consistent sales and plans to grow its customer base once again.

26.  Prepetition, Drip More LLC Montana, Drip More LP, 88 Cloud Consulting LLC, Deadstock LLC, '88 Vape LP, '88 Vape #2 LP, '88 Vape #3 LP, '88 Smoke & Vape LP, '88 Smoke & Vape #2 LP, '88 Smoke & Vape #3 LP, '88 Smoke & Vape #4 LP, FLOM LLC, and Cali Co Pack LLC sold their assets and assigned their debts to the Debtor herein.  The goal is to now take all the ideas and business models of these entities and operate all under the Debtor.

27.  This case was filed so that the Debtor can reorganize its financial affairs and maximize the value of his assets for the benefit of the estate.

28.  I believe that the following purported creditors of the Debtor have liens on cash collateral:

| | Creditor | Earliest Lien date | Claim Amount | Lien |
|---|---|---|---|---|
| 1 | Copperwood Capital LLC/ LIQUIDUS FUNDING LLC ("Copperwood") | 2/13/2020 (UCC) | $0 (paid in full prepetition) | "All accounts, all accounts receivables (past and future) chattel paper, cash deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by debtor; all proceeds, as that term is defined in Article 9 of the UCC (the "Collateral")." |
| 2 | Unknown (filed by C T Corporation System) | 4/30/2020 (UCC) | $0 | "All personal property of every kind and nature, including, without limitation, all accounts, contract rights, rights to the payment of money, insurance claims and proceeds, chattel paper, electronic chattel paper, documents, instruments, securities and other investment property, deposit accounts, supporting |

| | | | | |
|---|---|---|---|---|
| | | | | obligations of every nature, and general intangibles, including without limitation, customer lists, and all books and records related thereto, and all recorded data of any kind and any nature, regardless of the medium of recording; together with, to the extend not listed above as the original collateral, all substitutions and replacements for and products of any of the foregoing property, and together with proceeds of any and all of the foregoing property." |
| 3 | Harper Advance, LLC ("Harper") | 7/16/2020 (UCC) | $9,432,349.16 (the cumulative amount from its four liens) | "Secured party has a security interest in all of the Debtor's future receivables, inventory, equipment, goods, accounts, investment property, and other personal property and assets." |
| 4 | Harper (assignee from Funomate Technologies, 1/31/2024) | 8/9/2022 (UCC) | See above | "Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts: I Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing." |
| 5 | Harper | 4/5/2023 (UCC) | See above | "All assets and accounts receivable of Drip More LP." |
| 6 | Harper | 4/5/2023 | See above | "All assets and accounts |

| | | | (UCC) | | receivable of Drip More LLC." |
|---|---|---|---|---|---|
| | 7 | Employment Development Department ("EDD") | 11/27/2023 (Tax Lien) | $8,380.26 | "The amount of delinquency above set forth shall be a lien upon all real or personal property and rights to such property, including all after acquired property and rights to property belonging to the above named." |
| | 8 | MODO LLC ("MODO") | 1/22/2024 (UCC) | Unknown | "Secured party has a security interest in all of debtor's future receivables, inventory, equipment, goods, accounts, investment property, and other personal property and assets." |

(Collectively, the "Purported Secured Creditors").

29.     The Debtor is not aware of any other entity asserting an interest in the Cash Collateral.

30.     Attached as **Exhibit "B"** and incorporated herein is a true and correct copy of the UCC-1 Financing Statement ("UCC") filed by Copperwood on February 13, 2020.

31.     Attached as **Exhibit "C"** and incorporated herein is a true and correct copy of the UCC filed by C T CORPORATION SYSTEM on behalf of an unknown party on April 30, 2020.

32.     Attached as **Exhibit "D"** and incorporated herein is a true and correct copy of the UCC filed by Harper on July 16, 2020.

33.     Attached as **Exhibit "E"** and incorporated herein is a true and correct copy of the UCC filed by Fundomate Technologies on August 9, 2022 and the assignment to Harper filed on January 31, 2024.

34.     Attached as **Exhibit "F"** and incorporated herein is a true and correct copy of the UCC filed by Harper on April 5, 2023.

35.     Attached as **Exhibit "G"** and incorporated herein is a true and correct copy of the UCC filed by Harper on April 5, 2023.

36.     Attached as **Exhibit "H"** and incorporated herein is a true and correct copy of the tax lien filed by the EDD on November 27, 2023.

RHM LAW LLP

24

37.     Attached as **Exhibit "I"** and incorporated herein is a true and correct copy of the UCC filed by MODO on January 22, 2024.

38.     Attached as **Exhibit "J"** and incorporated herein is the required *Statement Regarding Cash Collateral or Debtor in Possession Financing [FRBP 4001; LBR 4001-2].*

39.     Through this Motion, the Debtor requests that the Court treat the initial hearing as a preliminary hearing and enter an interim order approving necessary expenses to avoid immediate and irreparable harm to the estate pending a final hearing.

40.     To that end, within the first 14-days of this case (July 5, 2024 through July 19, 2024 - business days), the Debtor has the following necessary expenses to avoid immediate and irreparable harm:

| Expenses | Amount |
| --- | --- |
| Materials (cost of goods sold) | $96,690 |
| Employee Payroll (excluding insiders) | $20,561 |
| Payroll Taxes | $2,848 |
| Property Insurance | $835 |
| Shipping/Warehouse Supplies | $1,008 |
| Manufacturing Supplies | $437 |
| Box Truck Rental | $900 |
| Storage | $1,828 |
| Electrical | $876 |
| Waste Disposal | $5,055 |
| Water | $525 |
| Fuel for Box Truck | $750 |
| Licenses/Permits | $5,000 |
| Shipping | $8,680 |
| **Total:** | **$145,993** |

41.     I believe that approval of the expenses listed in the chart above will ensure that the Debtor's operation will allow the business to run smoothly and not be affected by the filing.

42.     I believe that those expenses represent the expenditures to maintain the business operations for the Interim Period.

RHM LAW LLP

43.     With this kind of operation, the whole is greater than the sum of its parts as they are interdependent.  If any one component is affected, it will have significant consequences for the Debtor's ability to manufacture and sell its products and generate revenue for the creditors of the estate.  As a result, the Debtor could lose customers and damage its reputation in the industry.  Therefore, I believe that unless the Debtor is able to pay the expenses set forth in the chart, immediate and irreparable harm to the business will occur.

44.     The Debtor cannot operate without its employees as they make the products, assemble them, package/ship them, sell, etc.  The Debtor's employees are scheduled to be paid on July 15, 2024 (15th and last day of each month), with payroll to be initiated by 2:00 p.m. on July 12, 2024.  Some of those employees have families with their own bills and household expenses.  If the Debtor is unable to pay payroll for several weeks, I believe that some of the employees might quit to find other employment or become disgruntled, which may affect their performance.  I believe that it is critical for the survival of the Debtor that it keeps its employees happy and pays its employees without any interruptions.

45.     Similarly, the Debtor must be able to pay the taxes associated with payroll to avoid becoming delinquent with the Employment Development Department (the "EDD") and incurring additional administrative expenses.

46.     The Debtor must have access to funds to buy the materials to make the products as it cannot generate revenue unless it has the products available to sell to its customers.  This will allow the Debtor to adequately manufacture its products.  Along those lines, the Debtor has to purchase supplies associated with the manufacturing, which allows the Debtor to be able to make its products and to keep its employees safe.  The Debtor must also pay for waste disposal from the manufacturing of the products, otherwise the Debtor would have to incur the expenses with storing and/or disposing of the waste.  This also ensures that the Debtor will not violate any state/federal regulations as to waste disposal.

**RHM LAW LLP**

47.     The Debtor must be able to pay its property insurance premium timely or risk exposing the estate to postpetition liability as the policy could be suspended or cancelled.

48.     The Debtor has expenses associated with the warehouse supplies, including assembly and storage.  The Debtor must have the ability to package its product in order to make sure it is available for sale and distribution.  Similarly, the Debtor must have the ability to pay for storage to adequately store and protect its product.  If the product gets damaged or stolen, that will severely harm the Debtor.

49.     The Debtor must pay for shipping and the associated expenses, such as shipping supplies, box truck rental, and fuel.  Again, if the Debtor is unable to ship or move its product, it will not be able to generate revenue and will severely harm its reputation.

50.     The Debtor must pay its utilities, such as electricity and water, or risk them being shut off for nonpayment.

51.     Lastly, the Debtor must be able to pay all licenses and permits to stay in compliance with industry regulations.

52.     Notwithstanding the request to allow use of cash collateral for the first two weeks of this case, the Debtor respectfully requests an order of this Court authorizing it to use cash collateral for the period July 5, 2024 through October 31, 2024, on the terms and conditions set forth herein, and as set forth in the projected income and expense statement (the "Budget"), which is attached hereto as **Exhibit "A"** and incorporated herein.

53.     Here, the Debtor seeks to use Cash Collateral based on the attached Budget for the next three months, i.e., the Interim Period.  The Budget delineates the amount of Cash Collateral needed for the Interim Period to maintain and operate the business.  The ability for the Debtor to maintain and operate the business will significantly facilitate the intended goal of this case to reorganize.

RHM LAW LLP

54.     As set forth above, if the Debtor's access to the cash collateral is interrupted or ceases, the consequences would be disastrous for the business and the estate.  The Debtor would be unable to operate and preserve the business.  The employees would leave, the Debtor would be unable to purchase inventory, and the business would shut down making its value as a going concern zero.  In sum, I believe that the Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

55.     I believe that the Debtor has significant value as a going concern rather than if it is forced to shut down and liquidate its assets.

56.     As such, the Debtor has determined that it would be in the overwhelming best interests of the estate and its creditors to use the cash collateral to continue to operate and maintain its business.

57.     The Debtor intends to use the Cash Collateral to operate and preserve the business as is set forth in the Budget attached as **Exhibit "A."**

58.     Therefore, I believe that the Purported Secured Creditors are adequately protected by the continued and uninterrupted operation of the business.  The Debtor's use of Cash Collateral will enhance or preserve the value of the estate because the use of Cash Collateral is essential to continue the ordinary maintenance and operation of the business.

59.     The Debtor will also give to the Purported Secured Creditors a replacement lien to the extent that the creditor's Cash Collateral is actually used.

60.     The Debtor will segregate in its cash collateral DIP bank account all revenue exceeding the funds needed to pay the expenses set forth in the Budget.

61.     The Debtor also proposes monthly adequate protection payments to following Purported Secured Creditors:

-Harper: $35,000 per month, with the payments starting on July 29, 2024, and on the 29th of each month thereafter, through October 31, 2024.

-EDD: $2,095 per month, with the payments starting on July 29, 2024, and on the 29th of each month thereafter, through October 31, 2024.

RHM LAW LLP

1       62.    The Debtor believes that MODO will be fully unsecured based on the senior

2   liens and the value of the Debtor's assets, and therefore, will not receive adequate

3   protections payments.  Nonetheless, the Debtor believes that MODO will be adequately

4   protected by the continued operation of the business.

5       63.    Based on the foregoing, I believe that the Purported Secured Creditors will

6   be adequately protected.

7       64.    Although the Budget represents the Debtor's best estimate of the necessary

8   expenses associated with the operation of the Property during the Interim Period, they may

9   fluctuate due to circumstances out of the Debtor's control, such as unanticipated expenses

10  related to restocking inventory, repairing or replacing equipment, hiring new employees, or

11  other emergency expenses.  Therefore, the Debtor requests court authority to deviate from

12  the total operating expenses contained in the budget by no more than 15% and to deviate

13  by category (provided the Debtor does not pay any expenses outside any of the approved

14  categories) without the need for further Court order.

15      65.    The Debtor will continue to be bound by the terms and conditions set forth in

16  the prepetition agreement except as specifically modified herein.  This shall not constitute

17  a modification of the liens granted to the Purported Secured Creditors by the Debtor

18  pursuant to the various agreements between the parties and various perfection documents.

19

20      I declare under penalty of perjury pursuant to the laws of the United States of

21  America that the foregoing is true and correct.

22

23      Executed this July 8, 2024, at Orange County, California.

24

25

26      By: _____

27      Brian Bereber

    *Declarant*

28

RHM LAW LLP

# EXHIBIT A

| | 7/5-7/12 | 7/13-7/19 | 7/20-7/26 | 7/27-7/31 | Aug-24 | Sep-24 | Oct-24 |
|---|---|---|---|---|---|---|---|
| **Monthly Income** | | | | | | | |
| Gross Sales Revenue | $125,294 | $125,294 | $125,294 | $125,294 | $501,177 | $501,177 | $501,177 |
| **Total Revenue** | **$125,294** | **$125,294** | **$125,294** | **$125,294** | **$501,177** | **$501,177** | **$501,177** |
| **Costs of Goods Sold ("COGS")** | | | | | | | |
| Materials | $48,345 | $48,345 | $48,345 | $48,345 | $193,379 | $193,379 | $193,379 |
| *Total COGS* | **$48,345** | **$48,345** | **$48,345** | **$48,345** | **$193,379** | **$193,379** | **$193,379** |
| **Gross Profits** (total revenue minus total COGS*)* | **$76,950** | **$76,950** | **$76,950** | **$76,950** | **$307,798** | **$307,798** | **$307,798** |
| | | | | | | | |
| **Operating Expenses** | | | | | | | |
| Inisder Payroll (will only be paid once the insider compensation is approved) | $0 | $0 | $15,000 | $15,000 | $30,000 | $30,000 | $30,000 |
| Employee Payroll | $20,561 | $0 | $52,071 | $0 | $107,000 | $107,000 | $107,000 |
| Payroll Taxes (federal & state) | $2,848 | $0 | $7,212 | $0 | $14,820 | $14,820 | $14,820 |
| Insurance - Property | $0 | $835 | $0 | $0 | $835 | $835 | $835 |
| Insurance - Worker's Comp | $0 | $0 | $0 | $2,537 | $2,537 | $2,537 | $2,537 |
| Insurance - Auto | $0 | $0 | $0 | $2,872 | $2,872 | $2,872 | $2,872 |
| Supplies - Shipping/Warehouse | $1,008 | $0 | $1,364 | $0 | $2,372 | $2,372 | $2,372 |
| Supplies - Manufacturing/Janitorial | $218 | $218 | $218 | $218 | $873 | $873 | $873 |
| Supplies - Sales/Office | $0 | $0 | $0 | $174 | $174 | $174 | $174 |
| Software (Adobe, Dropbox, Gmail, Klaviyo, Remote PC, Badger Maps) | $0 | $0 | $1,130 | $2,734 | $3,864 | $3,864 | $3,864 |
| Rent - Office | $0 | $0 | $0 | $750 | $750 | $750 | $750 |
| Rent - Warehouse | $0 | $0 | $0 | $20,395 | $20,395 | $20,395 | $20,395 |
| Phone & Internet | $0 | $0 | $0 | $807 | $807 | $807 | $807 |
| Equipment Rental - Box Truck | $450 | $450 | $450 | $450 | $1,800 | $1,800 | $1,800 |
| Equipment Rental - Penske Storage Trailers | $0 | $0 | $0 | $528 | $528 | $528 | $528 |
| Storage Units | $1,828 | $0 | $506 | $0 | $2,334 | $2,334 | $2,334 |
| Misc. Repairs & Maintenance for Equipment (reserve) | $750 | $750 | $750 | $750 | $3,000 | $3,000 | $3,000 |
| Utilities (electrical) | $0 | $876 | $0 | $0 | $950 | $950 | $950 |
| Waste service | $5,055 | $0 | $0 | $0 | $2,500 | $2,500 | $2,500 |
| Water | $525 | $0 | $0 | $0 | $600 | $600 | $600 |
| Fuel | $375 | $375 | $375 | $375 | $1,500 | $1,500 | $1,500 |
| Advertising & Marketing | $3,750 | $3,750 | $3,750 | $3,750 | $15,000 | $15,000 | $15,000 |
| Licenses and Permits | $0 | $5,000 | $0 | $0 | $5,000 | $5,000 | $5,000 |
| QuickBooks | $185 | $0 | $0 | $0 | $185 | $185 | $185 |
| Postage/LTL Shipping | $5,303 | $3,377 | $4,500 | $4,500 | $18,000 | $18,000 | $18,000 |
| Auto Payments | $0 | $0 | $0 | $2,060 | $987 | $987 | $987 |
| **Total Operating Expenses** | **$42,856** | **$15,631** | **$87,327** | **$57,901** | **$239,683** | **$239,683** | **$239,683** |

| *Bankruptcy Expenses* | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Adequate Protection Payments** | | | | | | | |
| Harper Advance | $0 | $0 | $0 | $35,000 | $35,000 | $35,000 | $35,000 |
| EDD | $0 | $0 | $0 | $2,095 | $2,095 | $2,095 | $2,095 |
| **Admistrative** | | | | | | | |
| MOR Preparer Fees | $0 | $0 | $0 | $0 | $750 | $750 | $750 |
| RHM LAW LLP (general BK counsel) (once fees/costs approved) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| CPA (once employed/fees approved) | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| UST Fees | $0 | $0 | $0 | $0 | $0 | $0 | $11,008 |
| ***Total Bankruptcy Expenses*** | **$0** | **$0** | **$0** | **$37,095** | **$37,845** | **$37,845** | **$48,853** |
| **Total Expenses** (operating and bankruptcy) | **$42,856** | **$15,631** | **$87,327** | **$94,996** | **$277,528** | **$277,528** | **$288,536** |
| | | | | | | | |
| **Net Profits** (gross profits minus total expenses) | **$34,093** | **$61,319** | **($10,377)** | **($18,046)** | **$30,270** | **$30,270** | **$19,262** |
| ***Cash Balance*** (as of the petition date, the Debtor held no cash) | **$34,093** | **$95,412** | **$85,034** | **$66,988** | **$97,258** | **$127,528** | **$146,789** |

# EXHIBIT B

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
|---|
| Corporation Service Company |
| 800-858-5294 |

| B. E-MAIL CONTACT AT FILER (optional) |
|---|

| C. SEND ACKNOWLEDGMENT TO: (Name and Address) |
|---|
| CORPORATION SERVICE COMPANY |
| 801 ADLAI STEVENSON DRIVE |
| Springfield, IL 62703-4261 |
| USA |

**DOCUMENT NUMBER: 86126420002**
**FILING NUMBER: 20-7762445481**
**FILING DATE: 02/13/2020 14:08**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | Drip More LLC | | | | |
| | 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1110 Palmyrita Ave Ste 120 | Riverside | CA | 92507 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | Bereber | Brian | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 67 Turnstone | Irvine | CA | 92618 | USA |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | Copperwood Capital LLC | | | | |
| | 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 800 N. Shoreline Blvd., Suite 1500 S. | Corpus Christi | TX | 78401 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
All accounts, all accounts receivable (past present and future) chattel paper, cash, deposit accounts, documents, equipment, general intangibles, instruments, inventory, or investment property, as those terms are defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by debtor; and all proceeds, as that term is defined in Article 9 of the UCC (the "Collateral") Notification is hereby given that Debtor and Guarantor have granted a negative pledge to Copperwood Capital LLC with respect to the collateral. Any subsequent lender or lienor may be tortuously interfering with Copperwood Capital's rights.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check only if applicable and check only one box: | | | 6b. Check only if applicable and check only one box: | |
|---|---|---|---|---|
| ☐ Public-Finance Transaction | ☐ Manufactured-Home Transaction | ☐ A Debtor is a Transmitting Utility | ☐ Agricultural Lien | ☐ Non-UCC Filing |

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
[177535026]

FILING OFFICE COPY

# EXHIBIT C

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions
800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071
USA

**DOCUMENT NUMBER: 88364350002**
**FILING NUMBER: 20-7775862266**
**FILING DATE: 04/30/2020 13:12**

IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Drip More LLC | | | | |

OR

| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1110 Palmyrita Ave | Riverside | CA | 92507 | USA |

**2. DEBTOR'S NAME:** Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| Bereber | Brian | C | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1110 Palmyrita Ave | Riverside | CA | 92507 | USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| C T Corporation System, as representative | | | | |

OR

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 330 N Brand Blvd, suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

All personal property of every kind and nature, including, without limitation, all accounts, contract rights, rights to the payment of money, insurance claims and proceeds, chattel paper, electric chattel paper, documents, instruments, securities and other investment property, deposit accounts, supporting obligations of every nature, and general intangibles, including without limitation, customer lists, and all books and records related thereto, and all recorded data of any kind and any nature, regardless of the medium of recording; together with, to the extent not listed above as the original collateral, all substitutions and replacements for and products of any of the foregoing property, and together with proceeds of any and all of the foregoing property

**5.** Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check **only** if applicable and check **only** one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION** (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
CA-0-74888329-59005582

**FILING OFFICE COPY**

**EXHIBIT D**



B0300-7897 07/16/2020 4:06 PM Received by California Secretary of State

U200001068620



**STATE OF CALIFORNIA**
*Office of the Secretary of State, Alex Padilla*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File #: U200001068620

Date Filed: 7/16/2020

Submitter Information:

| | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CORPORATION SERVICE COMPANY |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR<br>SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| DRIP MORE LP | 1110 PALMYRITA AVE #120<br>RIVERSIDE, CA 92507 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| HARPER ADVANCE, LLC | 8484 WILSHIRE BLVD SUITE 630<br>BEVERLY HILLS, CA 90211 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
SECURED PARTY HAS A SECURITY INTEREST IN ALL OF DEBTOR'S FUTURE RECEIVABLES, INVENTORY, EQUIPMENT, GOODS, ACCOUNTS, INVESTMENT PROPERTY, AND OTHER PERSONAL PROPERTY AND ASSETS

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
1926 26551

# EXHIBIT E





**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: U220217298738

Date Filed: 8/9/2022

Submitter Information:

| | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CORPORATION SERVICE COMPANY |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR<br>SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| DRIP MORE LLC | 1110 PALMYRITA AVE #120<br>RIVERSIDE, CA 92507 |
| DRIP MORE LP | 25978 BUSINESS CENTER DR<br>REDLANDS, CA 92374 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| FUNDOMATE TECHNOLOGIES, INC. | 300 CONTINENTAL BLVD. STE. 410<br>EL SEGUNDO, CA 90245 |

Indicate how documentation of Collateral is provided:

Entered as Text

Description:

Receivables- All Assets now owned or hereafter acquired & wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts: I Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR & SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:

Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:

2373 48425

B0997-1616  08/09/2022  10:17 AM Received by California Secretary of State

U220217298738



U240008310419



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: U240008310419 |
| Date Filed: 1/31/2024 |

| Submitter Information: | |
|---|---|
| Contact Name | |
| Organization Name | |
| Phone Number | |
| Email Address | |
| Address | None |

| Amendment Action Information: | |
|---|---|
| Initial Financing Statement File Number | U220217298738 |
| Date Filed | 08/09/2022 |
| Amendment Action | Assignment |

Secured Party Assignee:

| Secured Party Name | Mailing Address | Assignee |
|---|---|---|
| HARPER ADVANCE, LLC | 7162 BEVERLY BLVD., #204<br>LOS ANGELES, CA 90036 | ☒ Assignee |

| Indicate how documentation of Collateral is provided: | Entered as Text |
|---|---|

Description:
All assets of the Debtor, whether now existing or hereafter arising.

Name of Secured Party of Record Authorizing This Amendment:

☐ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

| Authorizing Secured Party Name | FUNDOMATE TECHNOLOGIES, INC. |
|---|---|

Optional Filer Reference Information:

Miscellaneous Information:

B2459-7856 01/31/2024 9:38 AM Received by California Secretary of State




U240008310419

B2459-7856 01/31/2024 9:38 AM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT AMENDMENT (UCC 3)**

California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U240008310419 |
| Date Filed: 1/31/2024 |

Submitter Information:

Contact Name

Organization Name

Phone Number

Email Address

Address                None

Amendment Action Information:

Initial Financing Statement File Number      U220217298738

Date Filed                  08/09/2022

Amendment Action          Assignment

Secured Party Assignee:

| Secured Party Name | Mailing Address | Assignee |
| --- | --- | --- |
| HARPER ADVANCE, LLC | 7162 BEVERLY BLVD., #204<br>LOS ANGELES, CA 90036 | ☒ Assignee |

| Indicate how documentation of Collateral is provided: | Entered as Text |
| --- | --- |

Description:

All assets of the Debtor, whether now existing or hereafter arising.

Name of Secured Party of Record Authorizing This Amendment:

☐ If this Amendment is authorized by a Debtor, check this box and select the name of the Authorizing Debtor below.

Authorizing Secured Party Name          FUNDOMATE TECHNOLOGIES, INC.

Optional Filer Reference Information:

Miscellaneous Information:

# EXHIBIT F



U230024040517



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U230024040517 |
| Date Filed: 4/5/2023 |

**Submitter Information:**

| | |
| --- | --- |
| Contact Name | Dov Hershberg |
| Organization Name | Harper Advance, LLC |
| Phone Number | |
| Email Address | |
| Address | 7162 BEVERLY BLVD., #204 |
| | LOS ANGELES, CA 90036 |

**Debtor Information:**

| Debtor Name | Mailing Address |
| --- | --- |
| Drip More LP | 25978 Business Center Drive |
| | Redlands, CA 92374 |

**Secured Party Information:**

| Secured Party Name | Mailing Address |
| --- | --- |
| Harper Advance, LLC | 7162 BEVERLY BLVD., #204 |
| | LOS ANGELES, CA 90036 |

**Indicate how documentation of Collateral is provided:**
Entered as Text

**Description:**
All assets and accounts receivable of Drip More LP.

**Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:**
Not Applicable

**Select an alternate Financing Statement type:**
Not Applicable

**Select an additional alternate Financing Statement type:**
Not Applicable

**Select an alternative Debtor/Secured Party designation for this Financing Statement:**
Not Applicable

**Optional Filer Reference Information:**
DJK Acquisition of Drip - CA, SOS

**Miscellaneous Information:**

**Search to Reflect:**

☐ Order a Search to Reflect

B1654-2359  04/05/2023  2:34 PM Received by California Secretary of State

# EXHIBIT G



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U230024041014 |
| Date Filed: 4/5/2023 |

U230024041014

Submitter Information:

| | |
| --- | --- |
| Contact Name | Dov Hershberg |
| Organization Name | Harper Advance, LLC |
| Phone Number | |
| Email Address | |
| Address | 7162 BEVERLY BLVD., #204<br>LOS ANGELES, CA 90036 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| Drip More LLC | 25978 Business Center Drive<br>Redlands, CA 92374 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| Harper Advance, LLC | 7162 BEVERLY BLVD., #204<br>LOS ANGELES, CA 90036 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
All assets and accounts receivable of Drip More LLC.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:
Not Applicable

Select an additional alternate Financing Statement type:
Not Applicable

Select an alternative Debtor/Secured Party designation for this Financing Statement:
Not Applicable

Optional Filer Reference Information:
DJK Acquisition of Drip - CA, SOS

Miscellaneous Information:

Search to Reflect:

☐ Order a Search to Reflect

B1654-2364 04/05/2023 2:34 PM Received by California Secretary of State

Page 1 of 1

# EXHIBIT H

B2286-3978 11/27/2023 9:30 PM Received by California Secretary of State

RECORDING REQUESTED BY
**STATE OF CALIFORNIA**
EMPLOYMENT DEVELOPMENT DEPARTMENT
1-888-745-3886

**WHEN RECORDED MAIL TO:**
**STATE OF CALIFORNIA**
**EMPLOYMENT DEVELOPMENT DEPARTMENT**
**LIEN GROUP, MIC 92G**
**PO BOX 826880**
**SACRAMENTO, CA 94280-0001**

| For Office Use Only |
| :---: |
| **-FILED-** |
| File No.: U230083455428 |
| Date Filed: 11/27/2023 |

# NOTICE OF STATE TAX LIEN
(Filed pursuant to Section 7171 of the Government Code)

DRIP MORE LP

DRIP MORE

DRIP MORE LLC

1110 PALMYRITA AVE
STE 120
RIVERSIDE CA 92507-1723

Secretary of State

Letter ID. L0475672144

Certificate No. G002770522

| TAX PERIOD | TAX | PENALTY | INTEREST | TOTAL |
| :---: | :---: | :---: | :---: | :---: |
| 04/01/2022 to 12/31/2022 | $8,380.26 | $1,279.04 | $555.42 | $10,214.72 |

Interest calculated through 11/27/2023

The Director of the Employment Development Department hereby certifies the above is liable to the State of California for amounts due and required to be paid as determined under the provisions of the California Unemployment Insurance Code, the Revenue and Taxation Code, or both.

THE AMOUNT OF DELINQUENCY ABOVE SET FORTH SHALL BE A LIEN UPON ALL REAL OR PERSONAL PROPERTY AND RIGHTS TO SUCH PROPERTY, INCLUDING ALL AFTER-ACQUIRED PROPERTY AND RIGHTS TO PROPERTY BELONGING TO THE ABOVE NAMED.

Date: 11/27/2023

At Sacramento, California



The Director of the Employment Development Department has complied with all provisions of the California Unemployment Insurance Code in the computation and levy of the amount assessed and has caused this notice of lien to be issued by a duly authorized representative.

By _O Dumanska_

**Authorized Representative**
This agency has adopted the use of a facsimile signature as affixed above.

DE 2181 Rev. 5 (7-12)

# EXHIBIT I



U240005096320



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: U240005096320 |
| Date Filed: 1/22/2024 |

Submitter Information:

| | |
|---|---|
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CORPORATION SERVICE COMPANY |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR |
| | SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
|---|---|
| DRIP MORE LLC | 25978 BUSINESS CENTER DRIVE REDLANDS, CA 92374 |
| DRIP MORE LP | 25978 BUSINESS CENTER DRIVE REDLANDS, CA 92374 |
| DEADSTOCK LLC | 25978 BUSINESS CENTER DRIVE REDLANDS, CA 92374 |
| CALI CO PACK LLC | 25978 BUSINESS CENTER DRIVE REDLANDS, CA 92374 |

Secured Party Information:

| Secured Party Name | Mailing Address |
|---|---|
| MODO LLC | 7162 BEVERLY BOULEVARD #204 LOS ANGELES, CA 90036 |

Indicate how documentation of Collateral is provided:

Entered as Text

Description:

SECURED PARTY HAS A SECURITY INTEREST IN ALL OF DEBTOR'S FUTURE RECEIVABLES, INVENTORY, EQUIPMENT, GOODS, ACCOUNTS, INVESTMENT PROPERTY, AND OTHER PERSONAL PROPERTY AND ASSETS

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:

Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:

2742 89307

# EXHIBIT J

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Roksana D. Moradi-Brovia (Bar No. 266572)<br>W. Sloan Youkstetter (Bar No. 296681)<br>RHM LAW LLP<br>17609 Ventura Blvd., Suite 314<br>Encino, CA 91316<br>Telephone: (818) 285-0100<br>Facsimile: (818) 855-7013<br>roksana@RHMFirm.com<br>sloan@RHMFirm.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>DRIP MORE LLC,<br><br><br><br><br>Debtor(s). | CASE NO.: 8:24-bk-11703-SC<br><br>CHAPTER: 11<br><hr>**STATEMENT REGARDING**<br>**CASH COLLATERAL OR**<br>**DEBTOR IN POSSESSION FINANCING**<br>**[FRBP 4001; LBR 4001-2]**<br><hr>DATE:<br>TIME:<br>COURTROOM: 5C<br>ADDRESS:     411 West Fourth Street<br>                    Santa Ana, CA 92701 |
|---|---|

| Secured party(ies): Harper Advance, LLC, Employment Development Department, MODO LLC |
|---|

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both.  The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No.<br>(if applicable) |
|---|---|---|
| ☐ (i): "[A] grant of priority or a lien on property of the estate under § 364(c) or (d)" | | |
| ☐ (ii): "[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim"<br><br>☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br><br>☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party's prepetition debt, other than as provided in § 552(b) | | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | | Page No.: | Line No. (if applicable) |
|---|---|---|---|
| | *Continued from page 1* | | |
| | ☐ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay" ☐ Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☐ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | | |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)" ☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| **Additional Disclosures Required by LBR 4001-2** | | **Page No.:** | **Line No. (if applicable)** |
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

07/08/2024           Roksana D. Moradi-Brovia           /s/ Roksana D. Moradi-Brovia
*Date*                  *Printed Name*                  *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): _____
EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON AN INTERIM BASIS; MEMORANDUM
 OF POINTS AND AUTHORITIES; DECLARATION OF BRIAN BEREBER IN SUPPORT THEREOF

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
__07/08/2024_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __07/08/2024_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __07/08/2024_____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/08/2024 | Max Bonilla | /s/  Max Bonilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**:

- <u>Counsel for Debtor</u> Roksana D. Moradi-Brovia   Roksana@rhmfirm.com,
  matt@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
- <u>Counsel for US Trustee</u> Queenie K Ng   queenie.k.ng@usdoj.gov
- United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL [CONTINUED]**:

SECURED CREDITORS:

Harper Advance LLC
c/o Law Office of Susie Chovev, Esq
920 Crawford Road
Woodmere, NY 11598

Harper Advance LLC
c/o Steven W. Wells, Esq.
229 Warner Road
Lancaster, NY 14086

Harper Advance LLC
c/o Leib M. Lerner
Alston & Bird LLP
350 South Grand Avenue
51st Floor

Los Angeles, CA 90071

Modo LLC
7162 Beverly Blvd., Ste 204
Los Angeles, CA 90036

Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

C T Corporation System
330 N. Brand Blvd, Suite 700
Glendale, CA 91203

ALL PRIORITY CREDITORS OF THE ESTATE:

Employment Development Department
Bankruptcy Group MIC 92E
P. O. Box 826880
Sacramento, CA 94280-0001

Franchise Tax Board
Bankruptcy Section MS A340
PO BOX 2952
Sacramento, CA 95812-2952

California Department of Tax & Fee
Special Procedures Section MIC: 29
P.O. Box 942879
Sacramento, CA 94279

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Arizona Dept of Revenue
PO Box 29085
Phoenix, AZ 85038

City of Loma Linda Dept of Finance
25541 Barton Rd
Loma Linda, CA 92354

Missouri Dept Revenue Taxation Div
PO BOX 3375
Jefferson City, MO 65105-3375

San Bernardino County Tax Collector
825 East Hospitality Lane, 1st FL
San Bernardino, CA 92415-0914

State of New Jersey Dept of Treasur
PO BOX 260
Trenton, NJ 08646

City of Los Angeles
Office of Finance
200 N Main Street, Ste 920
Los Angeles, CA 90012

City of Tempe                                    Tempe, AZ 85281
20 E 6th Street

ALL REMAINING CREDITORS OF THE ESTATE + PARTIES FOR NOTICE:

U. S. Securities and Exchange Commission          Amex Merchant Processing Account
Attn: Bankruptcy Counsel                          PO BOX 299051
444 South Flower Street, Suite 900                Ft Lauderdale, FL 33329
Los Angeles, CA 90071-9591
                                                  AMM Recovery
Attorney General                                  2114 Main Street Suite 100-167
United States Department of Justice               Vancouver, WA 98661
Ben Franklin Station
P. O. Box 683                                     Arizona Dept of Economic Security
Washington, DC 20044                              PO BOX 6028
                                                  Phoenix, AZ 85005
Civil Process Clerk
United States Attorney's Office                   AWSAmazon Web Services, Inc
Federal Building, Room 7516                       410 Terry Avenue North
300 North Los Angeles Street                      Seattle, WA 98109
Los Angeles, CA 90012
                                                  Baum Family Partnership
2120 Southern Ave. LLC                            1840 Century Park East, 17th Floor
3107 East San Miguel Avenue                       Los Angeles, CA 90067
Phoenix, AZ 85016
                                                  BBST Realty II LLC
416-424 1/2 N. Fairfax, LLC                       34-07 Steinway Street, Suite 202
c/o Michael A. Shakouri, Esq.                     Long Island City, NY 11101
GOODKIN LAW GROUP, APC
1900 Century Park East, Suite 1820                Big Joe Lift Trucks
Los Angeles, CA 90067                             112 E Dominguez St
                                                  Carson, CA 90746
521 East  11TH ST, LLC
Three Carnegie Plaza                              Cintas - Long Island
c/o Robhana Management, Inc                       P.O. Box 63102
606 South Olive Street Ste 600                    Cincinnati, OH 45263
Los Angeles, CA 90014
                                                  Cintas - Los Angeles
ADP                                               P.O. Box 63103
c/o The Leviton Law Firm                          Cincinnati, OH 45264
Don A. Leviton, Esq.
One Pierce Place, Ste. 725W                       Cintas - Mesa
Itasca, IL 60143                                  PO Box 631025
                                                  Cincinnati, OH 45263-1025
ADT Commercial
PO BOX 219044                                     Cintas - Redlands
Kasnas City, MO 64121-9004                        PO Box 631025
                                                  Cincinnati, OH 45263-1025
Amex Credit Card
PO BOX 96001                                      Copperwood Capital LLC
Los Angeles, CA 90096-8000                        Ironwood Finance Inc.
                                                  800 N. Shoreline Blvd,, Suite 1500

Corpus Christi, TX 78401

Cox Cummunications Inc.
c/o McCarthy, Burgess & Wolff
26000 Cannon Road
Cleveland, OH 44146

David R Eshleman Trust
PO Box 1600
Yucaipa, CA 92399

Entrision
1704 West El Rancho Dr.
Mequon, WI 53092

Equator Coffee
PO Box 889042
Los Angeles, CA 90088

Everon/ADT Commercial
PO Box 219044
Kansas City, MO 64121

Ezekiel Korobkin CPA APC
dba Profetta
2829 Watt Avenue, Suite #130
Sacramento, CA 95821

Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

HMI Atlanta VI LLC
400 Plaza Dr
Secaucus, NJ 07094

Hunter Business Center (DE) LLC
c/o Oxford Properties
450 Park Ave., Fl 9
New York, NY 10022

Indian School COM (Maryvale Stip LL
c/o Nearhood Law Offices, PLC 2,
7537 East McDonald Drive
Scottsdale, AZ 85250

JFRCO, LLC
Colorado Center Tower 2
2000 S. Colorado Blvd., Ste #2-750
Denver, CO 80222

JLL Industrial Property Management

Attn: Dawn Sneed , Property Mgr.
3281 E. Guasti Rd., Ste 850
Ontario, CA 91761

JPMCC 2006-LDP7 South Stapley Drive
4022 East Broadway Road Suite 122
Phoenix, AZ 85040

Kaiser
P.O. Box 629028
El Dorado Hills, CA 95762

Liquidus Funding LLC
434 S. Catalina Street, #4
Los Angeles, CA 90020

NY State DOL
PO BOX 4305
Binghamton, NY 13902

NY Workkers Comp Board
328 State Street
Schenectady, NY 12305

Pacer Print
9207 Eton Avenue
Chatsworth, CA 91311

Paychex
c/o Brennan & Clark
721 E. Madison, Suite 200
Villa Park, IL 60181

Penske Truck Leasing
P.O. Box 7429
Pasadena, CA 91109

Performance Overnight LLC
DBA Unishippers
16 Corporate Woods Blvd.
Albany, NY 12211

Pro's Ranch Market LLC
c/o Maxwell & Morgan, LLP
Trevor L. Ash, Esq.
23046 Avenida De la Carlota, #600
Laguna Hills, CA 92653

Pro's Ranch Market LLC
c/o Southwest Legal Associates
4854 East Basline Road Ste 103
Mesa, AZ 85206

Pro's Ranch Market LLC
C/O Capital Asset Management
2701 E Camelback Rd, Suite 170
Phoenix, AZ 85016

Rad Vapor LLC
c/o Law Offices of Robert L Hill
5055 Avenida Encinas, Suite 100
Carlsbad, CA 92008

Rexford Industrial
11620 Wilshire Blvd.,, Suite 1000
Los Angeles, CA 90025

Riverside Public Utilities
3901 Orange Street
Riverside, CA 92501

Saia Shipping
104 E Woodlawn Ranch Rd.
Houma, LA 70363

So Cal Gas
PO Box 653
Monterey Park, CA 91754-0653

Southern Califoirnia Edison
PO Box 600
Rosemead, CA 91771

Space Architecture
8607 Venice Blvd
Los Angeles, CA 90034

Spectrum Enterprise
PO BOX 60074
City of Industry, CA 91716

Staples Business Advantage
PO Box 405386
Atlanta, GA 30384-5386

Toyota Financial Services
PO BOX 5855
Carol Stream, IL 60197-5855

Turning
1900 Embarcadero Rd. Unit # 102
Palo Alto, CA 94303

U.S. Small Business Administration

Office of General Counsel
312 N. Spring St., 5th FL
Los Angeles, CA 90012

UPS Supply Chain Solutions
c/o The Receivable Mgmt Serv. LLC
PO BOX 19646
Minneapolis, MN 55419

Verizon
P.O. Box 5321
Inglewood, CA 90313

Western American
c/o Spectra Management Co
20701 N Scottsdale Rd 107-623
Scottsdale, AZ 85255

WFC North Park LLC
c/o Westwood Financial Corp.
11440 San Vicente Boulevard, #200
Los Angeles, CA 90049

Wohl / West Port LLC
14 Corporate Plaza Drive # 110v
Newport Beach, CA 92660

World Wide Express Shipping
c/o The Hettena Law Firm, LC
31348 Via Colinas #106
Westlake Village, CA 91362

Yelp
706 Mission St.
San Francisco, CA 94103

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):


-Debtor's principal via email

-Counsel for Harper via email:    Leib.Lerner@alston.com

-U.S. Trustee analyst via email: "Sorensen, Marilyn (USTP)" <Marilyn.Sorensen@usdoj.gov>